UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

EDWARD A. ALLEN,                 CIVIL ACTION No.
DAVID L. OLSON, and
A&O INVESTMENTS, LLC.           HON.

      Defendants,

_____/

## **COMPLAINT**

      Plaintiff, Securities and Exchange Commission ("Commission"), alleges and states as follows:

## **NATURE OF THE ACTION**

1.      This matter involves fraudulent misrepresentations in the unregistered offer and sale of securities by Defendants Edward A. Allen ("Allen"), David L. Olson ("Olson"), and A&O

Investments, LLC ("A&O") (collectively, "Defendants"), a company owned and controlled by Allen and Olson.

2.      From approximately September 2005 through December 2008, Allen and Olson raised approximately $14.8 million from at least 100 investors through the offer and sale of promissory notes issued by A&O.

3.      Allen and Olson told investors that they would use the investors' money to purchase, rehabilitate, and sell real estate.  Allen and Olson promised to pay investors annual returns of 20%, represented that the returns were generated from the sale of its real estate properties, and told investors that they were doing well in the real estate market and were making money.  The majority of the promissory notes purportedly were secured by property owned by A&O.

4.      In reality, Allen and Olson operated a Ponzi scheme by using approximately $4.4 million of investors' funds to pay "interest" and, in some cases, principal to previous investors.  Allen and Olson spent only $5.1 million of the $14.8 million raised to purchase and rehabilitate real estate, and used $2.2 million to pay personal expenses of Allen, Olson, and their family members.

5.      Allen and Olson also misrepresented and omitted to state material facts regarding the collateral securing the notes.  As much as approximately $5.5 million worth of A&O promissory notes purportedly were secured by the same piece of property at 5124 Windover Lane in Lakeland, Florida.  This property's value was grossly inadequate to secure the notes.

6.      Allen and Olson also misrepresented the success of A&O's real estate business, which produced total revenues of only approximately $952,000.

7. Allen, Olson, and A&O, directly and indirectly, have engaged, and unless enjoined, will continue to engage, in acts, transactions, practices and courses of business that violate Sections 5(a), 5(c), and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

8. The Commission brings this action to enjoin such acts, transactions, practices, and courses of business pursuant to Section 20(a) of the Securities Act [15 U.S.C. § 78t(a)], and Sections 21(d) and (e) of the Exchange Act [15 U.S.C. §§ 78u(d) and (e)].

**DEFENDANTS**

9. **Edward A. Allen** is 34 years old and resides in Lakeland, Florida. Allen is the CEO of A&O Investments, LLC. From December 4, 2003 until he resigned on June 25, 2007, Allen was a registered representative associated with World Group Securities, Inc. ("WGS"), a broker-dealer registered with the Commission.

10. **David L. Olson** is 59 years old and resides in Lakeland, Florida. From September 2005 through approximately April 2009, Olson was the president of A&O Investments, LLC. Olson was a registered representative associated with WGS from April 12, 2002 until he resigned on September 7, 2007.

11. **A&O Investments, LLC** is a Lakeland, Florida limited liability company that Allen and Olson formed in September 2005. A&O Investments, LLC was, at all times relevant to the actions referred to herein, owned and controlled by Allen and Olson. It is part of the "A&O Companies," which, according to Allen and Olson, are "a privately held conglomeration of

businesses operating primarily in the residential real estate market." A&O Investments, LLC is the company through which Allen and Olson issued the majority of the promissory notes at issue.

## JURISDICTION

12. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa]. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

13. Defendant Olson inhabited and Defendants Allen, Olson, and A&O transacted business in the Northern District of Ohio and the acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the jurisdiction of the United States District Court for the Northern District of Ohio and elsewhere.

14. Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, transactions, practices, and courses of business alleged herein.

## FACTS

### DEFENDANTS' PUBLIC SOLICITATION OF INVESTORS

15. From approximately September 2005 through December 2008, Defendants offered and sold securities in the form of promissory notes.

16. Through their promissory note offering, Defendants raised approximately $14.8 million from at least 100 investors residing in at least nine states.

17.     The promissory notes were issued in the name of A&O Investments, LLC and other entities controlled by Allen and Olson (collectively, "A&O"). Allen and Olson controlled A&O and its activities. Both Allen and Olson solicited investors and executed the promissory notes on behalf of A&O, deposited the investors' funds into the bank accounts of A&O, and determined how these funds would be used.

18.     Allen and Olson recruited promissory note investors from customers of Georgia-based registered broker-dealer World Group Securities, Inc. ("WGS") for which Allen and Olson were registered representatives. Allen was a registered representative associated with WGS from December 2003 to June 2007 and worked out of its Lakeland, Florida office. Olson was a registered representative associated with WGS from April 2002 to September 2007 and worked out of its Boardman, Ohio office. Allen and Olson solicited WGS customers to become A&O investors while they were working at WGS and after they left WGS. Although Allen and Olson had left WGS, they created the impression that they were still affiliated with WGS. Many investors thought the A&O promissory note offering was linked to WGS, and as a result, these investors were more confident in the legitimacy of the A&O promissory note offering.

19.     Allen and Olson also offered the A&O promissory notes to the public through multiple mass mailings and through word-of-mouth.

20.     No one from A&O, or anyone else on its behalf, determined whether the A&O investors were accredited investors. Several A&O investors had net worths of less than $1 million and/or annual incomes of less than $200,000 at the time they invested in the A&O promissory notes.

21.     No one from A&O, or anyone else on its behalf, gave the A&O investors any financial information about A&O.

22.     In marketing materials, Allen and Olson represented that A&O "buys or otherwise takes control of a residential real estate property for the purpose of improvement and profit."

23.     Allen and Olson told investors that they would use the investors' funds to buy, rehabilitate, and sell real estate for a profit.

24.     As part of their money raising tactics, Allen and Olson convinced some of their investors to take out home equity loans so that they could invest the proceeds in the A&O promissory notes. They persuaded other investors to refinance their home mortgages to interest-only loans with lower monthly payments so that they could invest the excess cash from the new interest-only mortgages in the promissory notes.

25.     A&O gave investors a promissory note in return for their investments. In the promissory notes, A&O promised to pay investors annual returns of 20% on the investment. Investors could elect to receive interest payments monthly or accumulate and receive the interest payments at the end of the note's term, which ranged from less than a month to almost three years. At the end of the note's term, investors could either redeem their principal and any unpaid interest or roll their balance into a new note, which many investors did.

26.     The notes further provided that in the event that A&O failed to make a payment due under the note, the investor could, after 30 days, demand repayment of the entire amount of the note and interest due.

27.     The majority of the A&O promissory notes stated that they were secured by a mortgage on one or two parcels of real estate. These notes stated: "This note is secured by a

Real Estate Mortgage of an even date upon land known as: [the notes listed address(es) of property in Florida]." A document titled "Real Estate Mortgage" attached to the notes stated that A&O was granting property to the investor to secure prompt and full payment of principal and interest owed by A&O under the note. Several of the notes purported to be secured by a lake front home located at 5124 Windover Lane in Lakeland, Florida.

28. Olson told one investor that her note was the only note collateralized by the property at 5124 Windover.

29. An A&O employee told another investor that if anything went wrong with his investment, the investor would own that property. The mortgages were never recorded.

30. Allen and Olson told investors that the proceeds from real estate sales would be used to pay investors their interest and principal. Allen and Olson also told investors that A&O's real estate investments had been profitable.

31. In January 2008, Olson told one investor that the company had $7 million in assets, was doing well and making money, and that her money would not be used to pay business expenses. Olson told another investor that A&O was able to pay such a high rate of return because the company was profitable.

32. Allen and Olson also told some investors that their money was "safe." In addition, Olson told certain investors they could get their money back at any time and assured at least one investor that his principal and interest was "guaranteed."

33. A&O made monthly "interest" payments to the investors through approximately March 2008. The regularity of the "interest" payments led several investors to invest more money and caused others to encourage their family and friends to invest.

34. In approximately March 2008, A&O stopped making regular monthly "interest" payments to most of the existing investors and investors began requesting the return of their investments.

35. At that time, Allen and Olson admitted to A&O's employees that they did not have enough money to make A&O's March payroll. However, they continued to solicit investors and raised an additional $2.2 million from March through December 2008, some of which was used for payroll.

36. In approximately December 2008, Allen and Olson stopped offering and selling the A&O promissory notes.

37. No valid registration statement was filed or was in effect with the Commission in connection with the A&O Offering.

### DEFENDANTS' MISREPRESENTATIONS AND MISLEADING OMISSIONS

38. Throughout the period from September 2005 through December 2008, Allen and Olson knowingly or recklessly made material misrepresentations and omitted to state material facts about their use of offering proceeds, the collateral securing the investments, and the success of the investments.

### The Use of Offering Proceeds

39. Contrary to their representations, Allen and Olson did not invest all the funds they received from investors in the real estate market. Allen and Olson spent only approximately $5.1 million of the $14.8 million raised to purchase and rehabilitate real estate.

40. A&O's real estate investment business was a failure, producing revenues of only approximately $952,000, which were inadequate to pay the investors' promised returns.

41. Allen and Olson did not disclose these facts to investors. Instead, they operated a Ponzi scheme by using approximately $4.4 million of the investors' funds, approximately 30% of the total raised, to pay purported "interest" and, in some cases, principal to previous investors.

42. Allen and Olson also used approximately $2.2 million to pay personal expenses for themselves and their family members, approximately $3 million to pay A&O employees and other independent contractors, approximately $1 million to acquire, rehabilitate, and furnish a lavish office building from which they conducted A&O's activities, and approximately $506,000 for other A&O-related operating expenses. Allen and Olson did not disclose to investors that they would use their funds for any of these purposes.

43. In addition, Allen and Olson also made payments for multiple start-up companies that Allen and Olson formed and controlled which were not involved with real estate. These companies had names such as Geriatric Care Partners, LLC, and Cornerstone International Ministries, Inc. Allen and Olson transferred approximately $959,000 of investor funds to those entities and used the vast majority of the funds for purposes unrelated to A&O's real estate business.

### The Collateral Securing the Investments

44. Allen and Olson also misrepresented and omitted to state material facts regarding the collateral that was supposed to secure the promissory notes.

45. As much as approximately $5.5 million worth of A&O promissory notes purportedly were secured by the same piece of property at 5124 Windover Lane in Lakeland, Florida. This property's value was insufficient to secure the promissory notes. Allen and Olson purchased this property for $425,000 in June of 2006, it was valued at $345,000 during most of the time that

9

A&O was offering the notes, and had pre-existing mortgages recorded against it totaling $490,000.

46.     Allen and Olson did not disclose to investors that their notes were secured by the same property purportedly securing many other investors' notes or that the value of this property was insufficient to secure payment of the principal and interest owed under the notes.

### The Success of the Investments

47.     Allen and Olson told investors that the returns were generated from the sale of A&O's real estate properties. Allen and Olson also told investors that A&O was doing well in the real estate market and was making money.

48.     These statements were false because Allen and Olson were making very little money in the real estate market as A&O produced revenues of only approximately $952,000. The homes that A&O purchased with investor funds were purchased before the collapse of the real estate market. By the end of 2007, A&O still held nearly all of its properties, and after the collapse of the real estate market, the amount owed to lending institutions on the outstanding mortgages far exceeded the value of the properties.

49.     Allen and Olson nonetheless continued to solicit new investors through December 2008 without disclosing their difficulties in the real estate market. By July 2009, all of the properties owned or controlled by A&O were in foreclosure.

50.     Beginning in March of 2008, Allen and Olson did not pay most of the investors their regular "interest." Most of these investors have demanded that Allen and Olson return their principal and outstanding "interest." They have yet to receive any money.

51.     At the time that they made the above-referenced representations, Allen and Olson knew or were reckless in not knowing that such representations were false and misleading. Allen and Olson controlled A&O's activities and directed all of A&O's financial transactions and were aware of A&O's current financial condition. They knew that A&O was earning little money from its real estate ventures and that they were using investor funds to make payments to other investors and for personal and non-real estate related expenses.

## COUNT I

**Violations of Sections 5(a) and (c) of the Securities Act**
**[15 U.S.C. §§ 77e(a) and (c)]**

52.     Paragraphs 1 through 51 above are re-alleged and incorporated herein by reference.

53.     By their conduct, Allen, Olson, and A&O, directly or indirectly: (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; and (iii) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

54.     No valid registration statement was filed or was in effect with the Commission in connection with Allen's, Olson's, or A&O's offer and sale of the A&O promissory notes.

55. By reason of the foregoing, Allen, Olson, and A&O violated Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

56. Paragraphs 1 through 51 above are re-alleged and incorporated herein by reference.

57. By their conduct, Allen, Olson, and A&O, in the offer or sale of securities in the form of A&O promissory notes, by the use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly, have employed devices, schemes or artifices to defraud.

58. Allen, Olson, and A&O acted with scienter.

59. By reason of the foregoing, Allen, Olson, and A&O violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

60. Paragraphs 1 through 51 above are re-alleged and incorporated herein by reference.

61. By their conduct, Allen, Olson, and A&O, in the offer or sale of securities in the form of A&O promissory notes, by the use of the means or instruments of transportation and communication in interstate commerce and by the use of the mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or have engaged in transactions, practices or

courses of business which have operated as a fraud or deceit upon purchasers of securities in the A&O program.

62. By reason of the foregoing, Allen, Olson, and A&O violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT IV

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 Thereunder [17 C.F.R. § 240.10b-5]

63. Paragraphs 1 through 51 above are re-alleged and incorporated herein by reference.

64. By their conduct, Allen, Olson, and A&O, in connection with the purchase or sale of securities in the form of A&O promissory notes, by the use of the means or instrumentalities of interstate commerce or by the use of the mails, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon other persons, including purchasers and sellers of such securities.

65. Allen, Olson, and A&O acted with scienter.

66. By reason of the foregoing, Allen, Olson, and A&O violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that the Court enter a judgment:

A.	Permanently enjoining Allen, his agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from further violations of Sections 5(a), 5(c), 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)(1), (2) and (3)]; and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5];

B.	Permanently enjoining Olson, his agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from further violations of Sections 5(a), 5(c), 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)(1), (2) and (3)]; and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5];

C.	Permanently enjoining A&O, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from further violations of Sections 5(a), 5(c), 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)(1), (2) and (3)]; and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5];

D.	Ordering the Defendants to disgorge their ill-gotten gains, derived directly or indirectly from the conduct complained of herein, together with prejudgment interest thereon;

E.	Ordering Allen and Olson to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

F.	Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and to carry out the terms of all orders

and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of the Court; and

G.         Granting such further relief as the Court may deem appropriate.

                                      Respectfully submitted,

DATED: May 20, 2010                 /s/ Steven L. Klawans
                                      Steven L. Klawans
                                        John E. Birkenheier
                                        Jennifer L. Hieb
                                        Attorneys for Plaintiff
                                        U.S. Securities and Exchange Commission
                                        175 West Jackson Boulevard, Suite 900
                                        Chicago, IL 60604
                                        Telephone: (312) 886-1738 (Klawans)
                                        Telephone: (312) 886-3947 (Birkenheier)
                                        Telephone: (312) 353-7411 (Hieb)
                                        Facsimile:  (312) 353-7398
                                        E-mail: KlawansS@sec.gov
                                        E-mail: HiebJ@sec.gov
                                        E-mail: BirkenheierJ@sec.gov

**Certificate of Service**

I hereby certify that on May 20, 2010, a copy of the foregoing Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Steven L. Klawans
Steven L. Klawans
John E. Birkenheier
Jennifer L. Hieb
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604
Telephone: (312) 886-1738 (Klawans)
Telephone: (312) 886-3947 (Birkenheier)
Telephone: (312) 353-7411 (Hieb)
Facsimile: (312) 353-7398
E-mail: KlawansS@sec.gov
E-mail: HiebJ@sec.gov
E-mail: BirkenheierJ@sec.gov